YOUNG v. GHARIS et al.    (No. 7194.)

(Court of Civil Appeals of Texas. Dallas. Oct. 31, 1914.)

1. DEEDS (§ 110*)—CONSTRUCTION—QUESTIONS OF LAW OR FACT.

The construction of a deed is a matter of law for the court.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 255, 293; Dec. Dig. § 110.*]

2. DEEDS (§ 38*)—DESCRIPTION—SUFFICIENCY.

If the land intended to be conveyed by a deed be so inaccurately described that it appears on an inspection thereof that the identity of the land is altogether uncertain and cannot be determined, the court should pronounce the deed void.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

3. EVIDENCE (§ 452*)—PAROL EVIDENCE—DESCRIPTION IN DEED.

When the uncertainty in the description in a deed does not appear upon the face of the deed, but arises from extraneous facts, parol evidence is admissible to explain or remove it, and the deed should not be excluded from the jury,

but should go to them along with the parol evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2093–2101; Dec. Dig. § 452.*]

4. DEEDS (§ 110*)—DESCRIPTION—QUESTIONS FOR JURY.

Where the uncertainty in the description of a deed does not appear upon the face of the deed, but arises from extraneous facts and parol evidence is admitted to explain or remove the ambiguity, the identity of the land is a mixed question of law and fact, to be determined under appropriate instructions.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 255, 293; Dec. Dig. § 110.*]

5. EVIDENCE (§ 383*)—ADMISSIBILITY OF DEED IN EVIDENCE—CONCLUSIVENESS.

Where a deed under which plaintiff claimed in trespass to try title described the land as 4.13 acres out of the W. C. G. 320-acre survey, situated about 2 miles northwest of the courthouse in D., and being block No. 35 of the D. Guaranty & Investment Co.'s Manufacturing Plat of N., and also described it by metes and bounds, which showed that it was 600 feet long and 300 feet wide, the starting point beginning at the intersection of the northeast line of G. avenue with the northwest line of Tenth street, 1,285 feet from the south corner of Forest Park, there was no ambiguity in the description apparent upon the face of the deed, and it was error to exclude the deed on the assertion of counsel, in objecting to its introduction, that there was no survey in the county known as the W. C. G. survey, no such map as the D. Guaranty & Investment Co.'s Manufacturing Plat of N., and no street known as G. avenue or Tenth street, as if these facts were true, and the deed therefore insufficient to put subsequent purchasers for value on notice, the burden of proving such facts was on persons claiming to be such purchasers, and not on plaintiff, as a predicate for the admission of the deed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1660–1677; Dec. Dig. § 383.*]

6. EVIDENCE (§ 460*)—DESCRIPTION IN DEED —ADMISSIBILITY.

To aid in the identification of the land described in such deed, a deed purporting to convey 250 acres of land to the city of D., and the testimony of a witness that the tract so conveyed was generally known in the community as the Forest Park tract, should have been admitted.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

7. DEEDS (§ 118*)—DESCRIPTION—SUFFICIENCY OF EVIDENCE.

In trespass to try title, evidence to identify the land described in the deed under which plaintiff claimed *held* sufficient to make a question for the jury, and to support a finding identifying the tract as the land in controversy.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 118.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Trespass to try title by James Young against H. L. Gharis and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

R. V. & W. S. Davidson and Geo. T. Burgess, all of Dallas, for appellant.

TALBOT, J. This is an action of trespass to try title, in the ordinary form, brought by the appellant, James Young, against H. L. Gharis and wife, Quentin D. Corley, J. B. Godwin, G. M. Cole, and Mrs. M. M. Long, to recover a tract of land described in the petition as follows:

Being a part of the W. C. Grigsby survey in Dallas county, beginning at a point in the intersection of the northeast line of Grigsby avenue with Tenth street, which point is 1,285 feet south 45° east and 25 feet north 45° east from the south corner of Forest Park, as per map thereof of record in the records of Dallas county, Texas; thence north 45° east 300 feet to a point for corner; thence north 45° west 600 feet to a point for corner; thence south 45° west 300 feet to a point for corner; thence south 45° east 600 feet to the place of beginning.

The defendant J. B. Godwin answered by pleas of not guilty, the statutes of limitation of three, five, and ten years, and also pleaded improvements made in good faith. The defendants Gharis, Corley and Cole answered by pleas of not guilty, the statutes of limitation of three, five, and ten years, and charged, in effect, that the land sued for by the plaintiff, Young, was included in a larger tract owned by them, described by metes and bounds, and as a part of Miles Bennett and Crawford Grigsby surveys situated about 4 miles northwest from the city of Dallas, in Dallas county. These defendants also interplead, as warrantors of their title to the land in controversy, W. A. Scott and wife and S. R. Owen and C. C. Weichsel. Of these last-named parties, C. C. Weichsel answered by pleas of not guilty, statutes of limitation of five and ten years, and specially adopted the defenses set out in the pleading of those claiming under his covenants of warranty, and made their pleading "and everything therein contained" his own. The defendants Scott and wife and S. R. Owen made default; and, the death of the defendant Mrs. M. M. Long being suggested, the suit was dismissed as to her. A trial of the case resulted in a judgment in favor of the defendants, and the plaintiff appealed.

Appellant's first assignment of error complains of the court's action in refusing to admit in evidence, as a link in the chain of his asserted title to the land in controversy, a deed from the Dallas Guaranty & Investment Company to the Manufacturers' Record Company, of date October 8, 1891, filed for record in the office of the county clerk of Dallas county, Tex., October 9, 1891, and duly recorded in the deed records of said county. The deed excluded described the land therein conveyed as follows:

Being 4.13 acres of land out of the W. C. Grigsby 320-acre survey, situated about two (2) miles N. 40° W. from the courthouse in the city of Dallas, Dallas county, Texas, and being block No. thirty-five (35) of Dallas Guaranty & Investment Company's Manufacturing Plat of North Dallas, and meted and bounded as follows: Beginning at the south corner of said block and being intersection of the northeast line of Grigsby avenue with the northwest line of Tenth street, which stand 1,285 feet S. 45° E. and 25 feet N. 45° E. from the south corner of Forest Park; thence N. 45° E. 300 feet; thence

N. 45° W. 600 feet; thence S. 45° W. 300 feet; thence S. 45° E., and parallel with southwest line of Grigsby survey, and 25 feet from said line, 600 feet to the beginning, containing 4.13 acres of land out of said W. C. Grigsby survey."

And the objections to its introduction in evidence were: (1) That there is no such survey as the W. C. Grigsby survey in Dallas county, and hence a variance in the allegations of the petition with respect to the description of the land sued for and the description of the land conveyed by the deed; (2) that the description of the land by metes and bounds in the deed offered is wholly unintelligible to put anybody on notice; (3) that the land in said deed described is impossible of location; and (4) that counsel making the objections to the introduction of the deed had been advised by his associate counsel, who had examined the deed records of Dallas county, that there was no such street shown in any record as Grigsby avenue, nor as Tenth street, except in Oak Cliff, and that there is no map of record in Dallas county of Dallas Guaranty & Investment Company's Manufacturing Plat of North Dallas, and therefore the description of the land in the proffered deed is insufficient to put any one on notice who afterward bought the same land from the Dallas Guaranty & Investment Company by deed which covered and described a larger tract of land embracing the property involved in this suit.

The bill of exceptions, reserved to the court's ruling excluding the deed, also shows that, upon the foregoing objections being made, the trial judge said to counsel for appellant, in substance, that the deed in question was deficient in description, and that as a prerequisite to its admissibility and introduction he must show by extraneous evidence that there was such a survey in Dallas county as the W. C. Grigsby survey, that there was such a plat as the Dallas Guaranty & Investment Company's Plat of North Dallas of record in Dallas county, and that there were such streets as Grigsby avenue and Tenth street delineated upon such map. In compliance with this suggestion of the court appellant's counsel introduced E. E. Luesley, who testified as follows:

That by occupation he was an abstractor of land titles, and had been engaged in that line of business for more than 25 years in Dallas county; that he is now engaged with the Title Guaranty Company, and before that time he was with S. W. S. Duncan, abstractor, first, and afterward with Stewart Title Guaranty Company; that he commenced his employment with Duncan's land title office about November 25, 1880, and from that time and during the time he was with Duncan's office he was manager and owner of a part interest in the abstract business, and practically ran the plant and managed the office.

Whereupon plaintiff's counsel offered in evidence a deed from Dallas Guaranty & Investment Company to the city of Dallas, dated August 7, 1889, recorded in Book 116, page 40, Deed Records of Dallas County, Texas, conveying 250 acres of land out of the Miles Bennett survey in Dallas county, Tex., and in connection therewith offered the testimony of E. E. Luesley, who was still on the stand, stating that they expected to prove by the witness that the witness had been a long time a resident of Dallas, and that the land embraced in the deed from Dallas Guaranty & Investment Company to the city of Dallas was generally known in the community, from and after the date of said deed to the city of Dallas, as the Forest Park tract in the Miles Bennett survey, and that said deed from Dallas Guaranty & Investment Company, together with the offered testimony of the witness Luesley, were offered for the purpose of aiding the description in the deed from Dallas Guaranty & Investment Company to the Manufacturers' Record Company, which plaintiff had previously tendered in evidence, and to show that the tract of land described in the deed to the Manufacturers' Record Company lies 1,285 feet S. 45° E. and 25 feet N. 45° E. from the south corner of Forest Park. To the introduction of such deed to the city of Dallas and the testimony of the witness Luesley in connection therewith the defendants objected, as being wholly irrelevant and as throwing no light upon the issues in this case, and because not showing that the defendants had any notice or anything giving notice of the filing of said deed; that same does not refer to Forest Park, nor to any of the streets mentioned in the deed from Dallas Guaranty & Investment Company to the Manufacturers' Record Company, and has no tendency to put purchasers on notice with respect to the land in controversy, and that the record of said deed to the city of Dallas would not have the legal effect to put the defendants or other parties dealing with the land in controversy in this suit upon notice of the deed from Dallas Guaranty & Investment Company to the Manufacturers' Record Company, which objections were by the court sustained, to which ruling of the court plaintiff then and there excepted. Whereupon the direct examination of the witness E. E. Luesley was continued by the plaintiff's counsel, and the witness testified in substance:

That the office of S. W. S. Duncan was managed by him from the 25th of November, 1880, up to a few years ago, he owning an interest in the plant; that he was acquainted with the corporation known as Dallas Guaranty & Investment Company; that it had its place of business and domicile in Dallas city; that its business was buying and selling land; that the company continued in and conducted such business in Dallas for some five or six years after 1891; that witness was familiar with the location of the property in controversy; that there is in Dallas county no such survey as the W. C. Grigsby survey, but that there is a Crawford Grigsby survey, a John Grigsby survey, and a Wm. Grigsby survey; that the Crawford Grigsby survey adjoins the Miles Bennett survey on the south; that there is only one Crawford Grigsby survey in Dallas county, of 320 acres, which is located about 3 miles in a general direction north from the courthouse of the city of Dallas; that the city of Dallas is located upon the John Grigsby survey, and the Wm. Grigsby survey adjoins the John Grigsby survey at the

northwest corner and lies north of it; that the Wm. Grigsby survey is nearer to the city than the Crawford Grigsby survey; that there is no W. C. Grigsby survey in Dallas county, or in a northerly direction from the Dallas county courthouse, but that there is a Crawford Grigsby survey there in that direction; that the Dallas Guaranty & Investment Company prepared a map of a part of the Crawford Grigsby survey and the Miles Bennett survey; that witness has seen the map; that he first saw it shortly after it was made, as he did the abstract work for the Dallas Guaranty & Investment Company, and it was necessary for him to have the map to complete the abstracts; that to the best of his recollection the first time he saw the map was in the year 1888 or 1889; that the witness, in his business as manager of Duncan's abstract plant, made it a practice to get all maps as fast as he could find out they were made and keep them in his office for the benefit of himself and customers; that such maps were taken from the deed records (where recorded) or from any one making such maps.

Witness here identified a map on page 339, book 2, of the private map records of the Duncan abstract office, such map being that of Dallas Guaranty & Investment Company's Manufacturing Plat of North Dallas, showing a block No. 35 and showing a Grigsby avenue and a Tenth street, and witness testified:

That he got said map from L. H. Hopkins, who was manager of Dallas Guaranty & Investment Company, and said map was put in the said book in the year 1888 or 1889, and the book has continuously remained in the possession of S. W. S. Duncan abstract office until the sale of the Duncan plant to the Stewart Title Guaranty Company; that said book is now in the possession of said last-named company; that it is one of the records of the Stewart Title Guaranty Company; that this map is not recorded in Dallas county, and that the map in the book shown to witness was a tracing made from the original map made by Dallas Guaranty & Investment Company and given to the witness by Hopkins, who was a surveyor and a man in charge of the Dallas Guaranty & Investment Company. Thereupon counsel for plaintiff then offered in evidence the said deed from Dallas Guaranty & Investment Company to the Manufacturers' Record Company in connection with the said map described by the witness as above.

The Court: It will be refused at this time.

On cross-examination of the witness Luesley by defendants' counsel, he testified:

That there is no survey in Dallas county known as W. C. Grigsby survey; that there is a well-known survey known as Crawford Grigsby, also the John Grigsby and also the Wm. Grigsby surveys; that the book containing the map about which the witness testified is a private record made up by the witness' draftsman in the Duncan office, of which the witness was manager; that said map was never placed of record in Dallas county; that witness knows of a map called the "Dallas Guaranty & Investment Company's Manufacturing Plat of North Dallas," and same was never put of record in Dallas county.

Defendants' said objections as hereinabove set out to the introduction of the deed from Dallas Guaranty & Investment Company to the Manufacturers' Record Company, and to the said deed from Dallas Guaranty & Investment Company to the city of Dallas, and the plat above mentioned, and the testimony of the witness Luesley, offered in connection with said deed to said Manufacturers' Record Company were by the court sustained, to which action of the court in sustaining said objections and in excluding said deed to the city of Dallas, together with the plat and evidence offered in connection with said deed to said Manufacturers' Record Company plaintiff excepted. Thereupon the plaintiff offered no further testimony. Whereupon the court announced that he would render judgment for the defendants, which was accordingly done.

[1-5] We think the deed offered by the appellant should have been admitted in evidence. It is well settled that the construction of a deed is a matter of law for the court, and if the land intended to be conveyed by it be so inaccurately described that it appears, on an inspection thereof, the identity of the land is altogether uncertain and cannot be determined, the court should pronounce the deed void. On the other hand, it is equally well settled that when the uncertainty does not appear upon the face of the deed, but arises from extraneous facts, parol evidence is admissible to explain or remove it. It is said that in such cases the deed should not be excluded from the jury, but should go to them along with the parol evidence to explain or remove such ambiguity, and that the identity of the land is then a mixed question of law and fact, to be determined under appropriate instructions of the court. Kingston v. Pickins, 46 Tex. 99; Ragsdale v. Robinson, 48 Tex. 379; Hitchler v. Scanlan, 15 Tex. Civ. App. 40, 39 S. W. 633. Clearly we think it cannot be said that the deed in question shows upon its face that the land referred to therein cannot be identified. If there is any ambiguity in the description of the land, it is not patent upon the face of the deed, but such a latent ambiguity "as might arise from the evidence in applying the description in the deed to the land in controversy." There is no material difference in the description of the land sought to be recovered as contained in appellant's petition and the deed excluded. The petition describes the land by metes and bounds, and as being a part of the W. C. Grigsby survey in Dallas county, and the deed describes it in the same way, with additional description that it is "block No. thirty-five (35) of Dallas Guaranty & Investment Company's Manufacturing Plat of North Dallas." The calls, as given in both the petition and the deed, show without confusion or any uncertainty that the land sued for and which the deed purports to convey is in an oblong shape, with each end thereof 300 feet long and each side thereof 600 feet long. The deed recites that the tract contains 4.13 acres, and both the petition and the deed state the place of beginning to be at the intersection of Grigsby avenue with Tenth street at 1,285 feet from the south corner of Forest Park, thereby presenting two means of ascertaining the place of beginning of the tract conveyed, either of which, if found, together with the metes and bounds as given,

would be sufficient to determine the location of the land.

There being, then, no patent ambiguity upon the face of the deed, it was admissible in evidence without the aid of any parol evidence, and the bare assertion of counsel in objecting to its introduction that there was no such survey in Dallas county as the W. C. Grigsby survey, and that there was no such map as Dallas Guaranty & Investment Company's Manufacturing Plat of North Dallas, and no such streets shown in any record of the county as Grigsby avenue and Tenth street, should not have cast upon appellant the burden of proving that there were such streets and such a survey as essential to the admissibility of the deed. The deed, as we have shown, was not unintelligible, as contended by counsel for appellees, and was admissible in evidence without the necessity of such proof on the part of appellant. If there was no such survey in Dallas county as the W. C. Grigsby survey, and there were no such streets as Grigsby avenue and Tenth street, and hence the record of said deed was insufficient to put subsequent purchasers for value upon notice of appellant's claim of title, and if appellees occupied such position and were otherwise without notice, the burden of proving such facts, upon the introduction of said deed, would devolve upon them, and not upon appellant as a predicate for the admission of the deed. But at all events the deed in question purported to convey a certain tract of land which by the aid of extraneous evidence might be identified.

[6, 7] This being true, the testimony of the witness, Luesley, and the deed from Dallas Guaranty & Investment Company to the city of Dallas, purporting to convey 250 acres of land, a part of the Miles Bennett survey, in Dallas county, and known, according to the testimony of said witness, as the "Forest Park tract," should have been admitted in evidence to aid in the identification of the tract of land described in the deed of the Dallas Guaranty & Investment Company to the Manufacturers' Record Company first offered by appellant. This evidence of identification was sufficient, it occurs to us, to go to the court and jury, and to support a finding identifying the tract of land as the land in controversy.

For the reasons indicated, the judgment is reversed, and the cause remanded.